IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Appellant,<br><br>v.<br><br>THOMAS OSCAR CADY,<br><br>               Respondent. | No. 84149-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — While on pretrial electronic home detention (EHD) in Edmonds, Snohomish County, Thomas Oscar Cady failed to return home by curfew after a scheduled court hearing in King County earlier in the day. A jury convicted him of escape in the third degree. Cady argues that the State failed to prove that he committed this act in King County, as required by the law of the case in the jury instructions. We agree and reverse and remand for the trial court to dismiss with prejudice.

FACTS

Cady faced a felony charge in King County Superior Court and was released from jail, but the court imposed electronic home detention without bail. Cady was to carry out this home detention at his residence in Edmonds. Home detention required

Citations and pincites are based on the Westlaw online version of the cited material.

Cady to wear a "transmitter" around his ankle, which sent electronic signals to a "monitor" that remained stationary within his home. Cady signed a form acknowledging the conditions of conduct for persons ordered by King County Superior Court into EHD and agreed to abide by them.[1] The detention required Cady to stay "within the four walls" of his home unless he was given permission to leave for a court appearance or other "legitimate" reason. Cady was given permission to leave his home on February 12, 2020 for a court appearance in King County Superior Court by his King County Jail Corrections Division caseworker, Steve Kekoa Jaber. The permission required him to be back at his home by 5 p.m. that day.

The next morning, Jaber received an alert that Cady's transmitter had not returned to his home by 5 p.m. the previous day. Jaber attempted to call Cady at the number Cady had provided when he began home detention, but found the phone was disconnected. Jaber attempted to call at least one other phone number associated with Cady but was unable to reach him. Jaber did not attempt to locate Cady at Cady's

---

[1] The following is a summary of the conditions:
1. You shall commit no crimes.
2. You shall not use controlled substances without a valid prescription and shall not consume alcohol beginning from the date of this order.
3. You shall attend all court ordered therapy and treatment.
4. You shall attend work or school.
5. You shall be on time when reporting to meetings with [King County Department of Adult and Juvenile Detention (DAJD)] staff.
6. You must arrange for the employer to directly mail your wages to the DAJD caseworker.
7. You must obtain pre-approval to work overtime.
8. You shall not forge a document or provide false information to DAJD staff.
9. You shall maintain an active, primary telephone line with long distance service.
10. You must not remove the EHD monitoring equipment that was placed on your person or in your home.
11. You must comply with the curfew and curfew conditions set by DAJD staff.
12. You must obtain permission from DAJD staff prior to making a change in your residence.
13. You will be removed from EHD and placed in WER if you receive three written warnings in a 30 day period for being less than 60 minutes late in violation of conditions 5 and 11 above.

home or take any additional investigative steps to locate Cady. Jaber completed a report and forwarded it to Garren Clark, a criminal investigator with the King County Department of Adult and Juvenile Detention. Clark conducted no investigation of Jaber's report before filing Clark's own report and statement of probable cause with the prosecutor.

Cady was charged by information with escape in the second degree and theft in the second degree based on the fact that his electronic home detention transmitter was not detected at his home by the monitor. The State subsequently dismissed the theft charge. Cady proceeded to trial on the escape charge. At trial, the State initially submitted a proposed jury instruction for the lesser included offense of escape in the third degree, before withdrawing its proposal. The defense requested that the jury be instructed on the lesser included offense and the court agreed. The defense submitted the same instruction that the State had previously submitted. Both parties were sent copies of the jury instructions to review the night before they were finalized. The next day, prior to finalizing the instructions, the State did not make any objections to the proposed instructions. The jury was instructed that if they did not find Cady guilty of escape in the second degree they should consider whether he was guilty of the lesser included offense of escape in the third degree. Cady was convicted of escape in the third degree.

Cady appeals.

## DISCUSSION

Cady argues that because the State failed to object to the addition of an unnecessary element in the to-convict instruction for escape in the third degree, that the

3

act of escape occurred in King County, it became the law of the case and the State was required to prove the element beyond a reasonable doubt.

Washington's "law of the case" doctrine "derives from . . . common law." Roberson v. Perez, 156 Wn.2d 33, 41, 123 P.3d 844 (2005), and "is an established doctrine with roots reaching back to the earliest days of statehood." State v. Hickman, 135 Wn.2d 97, 101, 954 P.2d 900 (1998). In criminal cases, where additional elements are included in a jury instruction on the elements of the crime and not objected to, the State is required to prove those elements even if they are not included in the statute. State v. Johnson, 188 Wn.2d 742, 754, 399 P.3d 507 (2017).

In this case, the State failed to object to the inclusion of an unnecessary element in Instruction No. 11, the to-convict instruction for escape in the third degree. The instruction read

> To convict the defendant of the crime of escape in the third degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about February 12, 2020, the defendant knowingly escaped from custody or knowingly violated the terms of an electronic home monitoring program; and
>
> (2) That this act occurred in King County of the State of Washington.[2]

Under Hickman and Johnson, the element became the law of the case and the State was required to prove beyond a reasonable doubt that Cady committed the act of escape in King County. The instructions also defined "custody" as "restraint pursuant to an order of a court."

Cady contends that the State failed to provide sufficient evidence that the act

---

[2] The to-convict instruction for the charge of escape in the second degree required the jury to find the act occurred in the State of Washington.

occurred in King County.  We agree.

On appeal, a defendant may assign error to elements added under the law of the case doctrine.  Hickman, 135 Wn.2d at 102 (citing State v. Ng, 110 Wn.2d 32, 39, 750 P.2d 632 (1988)).  Such an assignment may include the sufficiency of the evidence of the added element.  Id. at 102 (citing State v. Barringer, 32 Wn. App. 882, 887-88, 650 P.2d 1129 (1982)).  Evidence is sufficient to support a criminal conviction if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citing State v. Green, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980)).  "A sufficiency challenge admits the truth of the State's evidence and accepts the reasonable inferences to be made from it."  State v. O'Neal, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007).  "Direct evidence is not required to uphold a jury's verdict; circumstantial evidence can be sufficient."  Id. at 506.  Dismissal with prejudice is required when there is insufficient evidence to sustain a charged offense.  State v. Loos, 14 Wn. App. 2d 748, 766, 473 P.3d 1229 (2020) (citing State v. Devitt, 152 Wn. App. 907, 913, 218 P.3d 647 (2009)).

In this case, the jury was presented with evidence that Cady faced felony charges in King County and as a condition of pretrial release would be placed on electronic home monitoring at his home in Edmonds.  The jury received court documents indicating that Cady had a court date on February 12, 2020, and that a bench warrant was issued for him on February 13.[3]  No evidence was admitted as to

---

[3] Notably, the jury did not find Cady guilty of escape in the second degree where they would have had to find beyond a reasonable doubt that Cady, on or about February 12, 2020, had been charged with a felony, escaped from custody, knew that his actions would result in

whether Cady appeared for his court hearing on February 12 or the basis of why a warrant was issued on February 13. At trial, the State emphasized the contents of exhibit 3, the admitted clerk's minute entry for a motion hearing on February 13. The document indicated that the court granted the State's motion for issuance of a bench warrant and a prosecutor was present, but the defendant was "not present." During closing, the State argued that Cady did not show up to his court hearing.[4] However, February 13 was the State's motion request for a warrant not Cady's February 12 scheduled court hearing. Though a jury possibly could infer the warrant issued because Cady did not appear at his court day the previous day, the jury also could have inferred that the warrant issued because Cady did not return to his home in Edmonds as required. The jury also received Cady's signed conditions of custody.

The device alerted Cady's caseworker at the King County Jail that Cady had not returned to his home in Edmonds by the curfew permitted for him to attend a court appearance on February 12. The caseworker was unable to reach Cady by phone and did not receive any communications from Cady. Neither the caseworker nor the investigator conducted any further investigation. There was no testimony regarding the county in which Cady's home was located. In fact, the jury sent an inquiry during deliberations asking "What county is the following address a part of?" alongside Cady's home address. The State presented no evidence that Cady knowingly escaped from

leaving or remaining absent from confinement without authorization, and that this act occurred in the State of Washington.

[4] Cady objected on the basis "that's not the evidence" and the court overruled the objection. Because the prosecutor also said "He turned off service on his phone. He was unable to be located" immediately after saying Cady "didn't even show up to his court hearing", it is not clear as to whether the objection was directed to one or both statements. Cady does not assign error to the court's ruling on appeal.

custody or violated the terms of an electronic home monitoring program in King County.

In Hickman, the State similarly included the unnecessary element of venue in the jury instructions and failed to prove it beyond a reasonable doubt. There, the State agreed to jury instructions requiring the Snohomish County venue to be proved as an element of the crime. Hickman, 135 Wn.2d at 101. Hickman had purchased a car in Washington State and left it with a friend while he traveled to Hawaii. Id. at 100. Hickman agreed to let two friends "steal" his car so he could file a report with his insurance company to obtain the balance of the loan on the car. Id. From Hawaii, Hickman called and filed an insurance claim with his insurance company located in Kent. Id. At his trial on charges of insurance fraud, the only evidence of venue was testimony that the vehicle had been located by law enforcement on a rural road in Snohomish County. Id. The Supreme Court reversed the conviction, finding that when Hickman had "allegedly called his insurance company to submit the fraudulent claim, he was in Hawaii while his insurance company was in King County" and concluding that "such evidence simply does not demonstrate Hickman knowingly presented or caused to be presented a fraudulent insurance claim in Snohomish County." Id. at 105-06.

The State argues that sufficient evidence supports the conviction because it showed a King County Superior Court judge signed the order authorizing EHD, and that Jaber testified that being on King County's EHD is basically a continuation of incarceration. This shows Cady was in custody in King County and, thus, the State argues, it supports the jury's conclusion that Cady committed the act of escape in King County. We disagree. This evidence may, arguably, establish that Cady was in King County "custody," but does not establish that when he escaped from that custody, the

7

criminal act, it occurred in King County.

The State also argues that Cady knowingly violated the terms of an electronic monitoring program while in King County custody by failing to maintain a phone number provided to King County. Again, the only evidence of a location where Cady was to maintain a phone line was in the house in Edmonds. The record is devoid of evidence of Cady's *act* of failing to maintain a phone line in King County.

No rational trier of fact could have found that Cady knowingly escaped from custody or violated the terms of an electronic home monitoring program in King County where there was no evidence that the criminal act occurred in King County.

We reverse and remand to the trial court to dismiss with prejudice.

Coburn, J.

WE CONCUR:

Chung, J.

Dwyer, J.

8